1

2

3

4

5

6

7

8                                   **UNITED STATES DISTRICT COURT**

9                                   **EASTERN DISTRICT OF CALIFORNIA**

10

11   JOSE M. RAMIREZ,                              )   Case No.: 1:11-cv-01811-JLT
                                                   )
12                     Petitioner,                 )   ORDER DENYING PETITION FOR WRIT OF
                                                   )   HABEAS CORPUS (Doc. 1)
13           v.                                    )
                                                   )   ORDER DIRECTING CLERK OF COURT TO
14   G. D. LEWIS, Warden,                          )   ENTER JUDGMENT AND CLOSE FILE
                                                   )
15                     Respondent.                 )
                                                   )   ORDER DECLINING TO ISSUE CERTIFICATE
16   _____                )   OF APPEALABILITY

17

18           Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.  The parties have filed their written consent to the jurisdiction of the

20   Magistrate Judge for all purposes.  (Docs. 8 & 9).

21                                        **PROCEDURAL HISTORY**

22           Petitioner is in custody of the California Department of Corrections and Rehabilitation

23   ("CDCR") serving an indeterminate sentence of 25 years-to-life pursuant to a judgment of the

24   Superior Court of California, County of Tulare (the "Superior Court") for his January 13, 2010

25   conviction following a jury trial for carjacking and second degree robbery.  (Clerk's Transcript on

26   Appeal ("CT") 105-106; Vol. 2, Reporter's Transcript on Appeal (Vol. RT) 208-209).

27           Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the

28

                                                       1

"5th DCA"), which, in a March 21, 2011 unpublished opinion, modified the judgment to vacate the stay of the ten-year gang enhancement for carjacking, but affirmed Petitioner's conviction in all other respects.  (Lodged Document ("LD") 4).   Petitioner filed a petition for review in the California Supreme Court that was summarily denied on June 8, 2011.  (LD 6).

On October 31, 2011, Petitioner filed the instant petition.  (Doc. 1).  Respondent's answer was filed on April 10, 2012.  (Doc. 16).  Respondent concedes that the sole ground for relief in the petition has been fully exhausted.  (Doc. 16, pp. 6-7).  Petitioner did not file a Traverse.

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's published/unpublished decision[1]:

At approximately 10:00 p.m. on August 11, 2009, Douglas Miller arrived at the West Palm Village Apartments (apartment complex) in Tulare; he was there to visit a friend. After he got out of his car and locked the doors, he turned to see that three persons-Dexter Rabadan, Jasper Martinez and appellant-had approached him, and that a fourth person was standing behind his (Miller's) car. Rabadan held a pocket knife six inches from Miller's throat and demanded that he empty his pockets. Appellant, standing two feet away, pointed a handgun at Miller's face.

Miller was acquainted with Rabadan and Martinez. He testified he had previously met Rabadan at what was "basically like a Northerner party" in the apartment complex, attended by "a bunch of like gang members probably." Miller knew they were gang members by the "red rags" they were wearing and by their tattoos. Rabadan had been wearing red at the party.

When Rabadan held the knife near Miller's throat, Miller told Rabadan to "stop playing," but Rabadan responded that "this ain't a game." Miller raised his hands and Rabadan reached into Miller's pockets; grabbed his wallet, cell phone and car keys; and handed the items to Martinez. Martinez then unlocked Miller's car, got in, started the car, and after his three cohorts also got in the car, drove away. At that point, Miller ran to his friend's apartment, told him he had been robbed, and directed him to call the police.

Approximately 30 minutes later, a police officer found Miller's car in an alley approximately three miles from the apartment complex. Missing from the vehicle were various items including Miller's stereo system.

Beginning approximately two hours after the robbery/carjacking, Roseanne Delagarza, Miller's fiancé, received phone calls and text messages from Miller's stolen cell phone. The phone's message "signature" had been changed from "Roseanne's Man" to "WSNG gang."

Police recovered fingerprints belonging to appellant and Rabadan from Miller's car. Police questioned appellant on October 10, 2009, and again the following day. During the second of these sessions, appellant stated he was "there" at the carjacking, he had a gun, and "yeah I did do it."

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).  Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

**Gang Evidence**

City of Tulare Police Detective Jesus Guzman works in the police department's "Gang Unit." He had received "gang training" in which the "Norteno gang," also known as the "Northerner" criminal street gang, was emphasized. In addition, in his work as a police officer, he had "come in contact" with Northerner gang members "[o]n a daily basis" for several years.

Northerner gang members "primarily wear, ... use a lot of ... the color red." In Tulare, there are smaller groups of Northerner gang members, variously described as "sets," "subsets," and "cliques," and it is common for members of these various smaller groups to associate with each other. Members of the Northerner gang are "territorial" and the apartment complex is located in the "territory" of the Northerner gang subset known as the "West Side Norteno Gangsters." The "primary activities" of the Northerner gang include robbery and carjacking.

Detective Guzman opined that appellant, Rabadan and Martinez were Northerner gang members based on, among other things, photographs depicting each of the three men displaying hand signs signifying the Northerner gang. Rabadan is a member of the "North Side Visa" clique, and appellant and Martinez are members of the "West Side Norteno Gangsters Tulare" clique. All three men are "on the low end" of the gang hierarchy.

Northerner gang members "commit crimes as a group" and "work[ ] as a team" so that they can "use these other Northern gang members to go back to [other gang members who] weren't there ... to support what happened," to "show off in front of each other," to show other gang members that they are willing to commit crimes for the gang, and to gain "respect" from other gang members. Members commit crimes "for the gang"--an activity gang members refer to as "putting in work"--to "further their status in the gang." A "younger" gang member can move up in the gang hierarchy by committing crimes. Northerner gang members also commit crimes to "intimidate" persons who are not members of their gang and who live "in the area [gang members] call home, their neighborhood."

The prosecutor asked Detective Guzman a hypothetical question, which posited the following: three Northerner gang members approached a person (victim) who had just gotten out of his car; two of the gang members demanded the victim hand over his "stuff"; one threatened the victim with a knife, and the another pointed a gun at the victim; one of the robbers grabbed various items, including a cell phone, from the victim's pocket; the three gang members drove away in the victim's car; thereafter "some text messages were sent ... from the stolen cell phone," which "indicated ... that there may have been some gang involvement"; and these events took place in the gang's territory.

The detective opined that the crimes described were "committed in association with [the Northerner gang][.]" He based his opinion on the following factors: three Northerner gang members committed the crime "working as a team together"; their actions were meant to "intimidate the victim"; the crimes were typical of those committed by members of the Northerner gang; the crimes were committed in the gang's territory; and gang-related text messages were sent from the cell phone stolen from the victim.

(LD 4, pp. 3-5).

## **DISCUSSION**

**I.**   **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

3

the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

**II.**     **Legal Standard of Review**

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25

4

1    (2002)(*per curiam*).

2        Consequently, a federal court may not grant habeas relief simply because the state court's

3    decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

4    Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  In

5    Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an

6    "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

7    fairminded jurists could disagree" that the state court decision meets the standards set forth in the

8    AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.

9    As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an

10   unreasonable application of, clearly established Federal law" is "difficult to meet," because the

11   purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme

12   malfunctions in the state criminal justice systems,'" and not as a means of error correction.  Richter,

13   131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens,

14   J., concurring in judgment).  The Supreme Court has "said time and again that 'an *unreasonable*

15   application of federal law is different from an *incorrect* application of federal law.'" Cullen v.

16   Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus

17   from a federal court "must show that the state court's ruling on the claim being presented in federal

18   court was so lacking in justification that there was an error well understood and comprehended in

19   existing law beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788. Put

20   another way, a state court's determination that a claim lacks merit bars federal habeas relief so long as

21   "fairminded jurists could disagree" on the state court's decision.  Yarborough v. Alvarado, 541 U.S.

22   652, 664 (2004).

23       Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state

24   court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1398 ("This backward-looking

25   language requires an examination of the state-court decision at the time it was made.  It follows that

26   the record under review is limited to the record in existence at the same time–i.e., the record before the

27   state court.")

28

5

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings.  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."

1    Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).    Where the state court denied the petitioner's

2    claims on procedural grounds or did not decide such claims on the merits, the deferential standard of

3    the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v.

4    Morgan, 313 F.3d at 1167.

5            The prejudicial impact of any constitutional error is assessed by asking whether the error had

6    "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

7    Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

8    that the Brecht standard applies whether or not the state court recognized the error and reviewed it for

9    harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate

10   prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S.

11   648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective

12   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice

13   standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila

14   v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir.

15   2009).

16   **III.    Review of Petitioner's Claim**

17           The instant petition itself alleges a single ground for relief, i.e., insufficient evidence to support

18   a true finding on the gang enhancements.

19           A.  Sufficiency of the evidence to support the gang enhancement

20           Petitioner first contends that the mere fact that Petitioner and two of his three companions were

21   gang members, along with the prosecution's expert testimony, constituted insufficient evidence of the

22   required element of the gang enhancement that the offenses were committed in association with a

23   criminal street gang and committed with the specific intent to assist, further, or promote criminal

24   conduct by gang members.  This contention is without merit.

25           1.  The 5th DCA's Opinion.

26   The 5th DCA rejected Petitioner's claim as follows:

27   Establishing the truth of a gang allegation requires a two-part showing. (People v. Villalobos
     (2006) 145 Cal.App.4th 310, 322.) The prosecution must establish the underlying crime was

28

"[1] committed for the benefit of, at the direction of, or in association with any criminal street gang, [2] with the specific intent to promote, further, or assist in any criminal conduct by gang members ...." (§ 186.22(b)(1).)

Appellant first argues that the evidence was insufficient to establish the first part of the required showing. He does not dispute that the evidence was sufficient to establish appellant and two of his cohorts-Rabadan and Martinez-were members of the Northerner gang and that all three committed the instant offenses together. However, he argues, although the evidence was sufficient to establish that appellant committed the instant offenses in association with two persons who happened to be gang members, the evidence was not sufficient to establish he did so "in association with a criminal street gang," within the meaning of section 186.22(b)(1). We disagree.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence-that is, evidence that is reasonable, credible, and of solid value-from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (People v. Albillar (2010) 51 Cal.4th 47, 59-60 (Albillar).) This same standard applies when a conviction or finding rests primarily on circumstantial evidence. (People v. Perez (1992) 2 Cal.4th 1117, 1124.)

We recognize, as appellant suggests, that "the Legislature included the requirement that the crime to be enhanced be committed for the benefit of, at the direction of, or in association with a criminal street gang to make it 'clear that a criminal offense is subject to increased punishment under the STEP Act only if the crime is "gang related"'" (Albillar, supra, 51 Cal.4th at p. 60), and that "'it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang'" (Id. at p. 62). The evidence here, however, does not compel the conclusion that this is such a case.

We find instructive People v. Morales (2003) 112 Cal.App.4th 1176 (Morales). In that case, three gang members committed a robbery together. In upholding a true finding of a gang enhancement allegation, the court acknowledged that arguably, evidence that one gang member committed a crime in association with other gang members, without more, would be insufficient to show that the crime was committed for the benefit of the gang. But, the court stated: "The crucial element, however, requires that the crime be committed (1) for the benefit of, (2) at the direction of, or (3) in association with a gang. Thus, the typical close case is one in which one gang member, acting alone, commits a crime. Admittedly, it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this. Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." (Id. at p. 1198.)  Here too, there was no evidence that appellant and his fellow gang members were engaged in activity unrelated to the gang. Therefore, as in Morales, the jury reasonably could have inferred appellant acted in "association with" his gang. (§ 186.22(b)(1).)

Our conclusion is further supported by Detective Guzman's testimony that appellant and Martinez were members of the "West Side Norteno Gangsters Tulare" subset of the Northerner gang and the evidence that two hours after the robbery in which Miller's cell phone was taken, calls were placed from that phone displaying the signature, "WSNG gang." From this evidence, considered in conjunction with the absence of any evidence that the stolen phone

8

was in possession of anyone other than appellant and his accomplices after the robbery, the jury reasonably could have inferred that appellant or Martinez, using the phone they had just stolen, sent messages explicitly identifying the sender as a gang member. And, based on that inference, and Detective Guzman's testimony that gang members commit violent crimes together for various reasons, including to enhance their status in the gang hierarchy and gain the respect of other gang members, the jury reasonably could have concluded further that the robbery/carjacking was committed by gang members acting as gang members. Thus, substantial evidence supports the "association" element of the first prong of the gang allegation. (§ 186.22(b)(1).)

Appellant also challenges the sufficiency of the evidence supporting the specific intent element of the gang allegation. Specifically, he argues that the evidence was insufficient to establish that appellant acted "with the specific intent to promote, further, or assist in criminal conduct by gang members" within the meaning of section 186.22(b)(1) because there was no evidence "to demonstrate that the current offenses were distinctive enough to be labeled a Norteno gang offense, or that they were done for the purpose of furthering the Norteno gang's activities."

The major legal premise of appellant's argument is that section 186.22(b)(1) requires proof of the specific intent to promote, further, or assist in the "criminal conduct of the gang," and not simply criminal conduct committed by persons who happen to be gang members. And, as the parties note, as of the time briefing was completed, the California Supreme Court had not addressed this issue.

However, in Albillar, supra, 51 Cal.4th 47, decided after briefing was completed in the instant appeal, our Supreme Court, in rejecting the defendants' argument "that section 186.22(b)(1) requires the specific intent to promote, further or assist a gang-related crime," held: "The enhancement already requires proof that the defendant commit a gang-related crime in the first prong-i.e., that the defendant be convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang. [Citation.] There is no further requirement that the defendant act with the specific intent to promote, further, or assist a gang; the statute requires only the specific intent to promote, further, or assist criminal conduct by gang members." (Id. at p. 67.) Moreover, that criminal conduct may be "the criminal conduct underlying the offense of conviction sought to be enhanced." (Id. at p. 66.)

Here, as indicated above, the evidence showed the following: Rabadan, Martinez and appellant were members of the Northerner gang; Rabadan threatened Miller with a knife while appellant pointed a gun at Miller; and Rabadan grabbed Miller's car keys, cell phone and other items. From this evidence the jury reasonably could have concluded that appellant acted with the specific intent to assist, further, and promote the criminal conduct of gang members Rabadan and Martinez. (People v. Lindberg (2008) 45 Cal.4th 1, 27 [jury may infer a defendant's specific intent from all the facts and circumstances shown by the evidence].) Therefore, there was also substantial evidence supporting the second prong of the showing required to establish the truth of the gang allegation.

(LD 4, pp. 5-8.)

    2.  Federal Standard.

   Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307,

319, the test on habeas review to determine whether a factual finding is fairly supported by the record

is "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., quoting Jackson, 443 U.S. at 319.  Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations.  See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  However, mere suspicion and speculation cannot support logical inferences.  Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference.  Juan H., 408 F.3d at 1274.  Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson

10

1   and <u>Winship</u> to the facts of the case.  <u>Id</u>. at 1275.[1]

2          Moreover, in applying the AEDPA's deferential standard of review, this Court must also

3   presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); <u>Kuhlmann v.

4   Wilson</u>, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986).  This presumption of correctness applies to state

5   appellate determinations of fact as well as those of the state trial courts.  <u>Tinsley v. Borg</u>, 895 F.2d

6   520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court

7   determinations of legal questions or mixed questions of law and fact, the facts as found by the state

8   court underlying those determinations are entitled to the presumption.  <u>Sumner v. Mata</u>, 455 U.S. 539,

9   597, 102 S.Ct. 1198 (1981).

10          In <u>Cavazos, v. Smith</u>, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court further

11   explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson</u>

12   "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions
13   should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's
     verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed
14   with the jury. What is more, a federal court may not overturn a state court decision rejecting a
     sufficiency of the evidence challenge simply because the federal court disagrees with the state
15   court. The federal court instead may do so only if the state court decision was "objectively
     unreasonable." <u>Renico v. Lett</u>, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678
16   (2010) (internal quotation marks omitted).

17   Because rational people can sometimes disagree, the inevitable consequence of this settled law
     is that judges will sometimes encounter convictions that they believe to be mistaken, but that
18   they must nonetheless uphold.

19   <u>Cavazos</u>, 132 S.Ct. at 3.

20   "<u>Jackson</u> says that evidence is sufficient to support a conviction so long as 'after viewing the
     evidence in the light most favorable to the prosecution, any rational trier of fact could have
21   found the essential elements of the crime beyond a reasonable doubt.'  443 U.S., at 319, 99
     S.Ct. 2781.  It also unambiguously instructs that a reviewing court "faced with a record of
22   historical facts that supports conflicting inferences must presume—even if it does not
     affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of
23   the prosecution, and must defer to that resolution." <u>Id</u>., at 326, 99 S.Ct. 2781.

24   <u>Cavazos</u>, 132 S.Ct. at 6.[2]

25

26   _____
     [1]Prior to <u>Juan H.</u>, the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an
27   additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  <u>See</u> <u>Chein v. Shumsky</u>,
     373 F.3d 978, 983 (9th Cir. 2004); <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102 (9th Cir. 2005).
28   [2] To the extent that the 5th DCA's opinion does not expressly cite the <u>Jackson v. Virginia</u> standard in analyzing the

11

3.  Analysis.

As mentioned, Petitioner contends that, while the evidence was sufficient to establish that Petitioner and two other gang members committed the crime together, the evidence was not sufficient to establish he did so "in association with a criminal street gang," within the meaning of section 186.22(b)(1).

With regard to the sufficiency of the evidence to support a gang enhancement under § 186.22, the Ninth Circuit previously held as follows:

> California law requires the prosecutor to prove two things. First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." Cal. Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Id. We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone.

Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir.2009) (citing Garcia v. Carey, 395 F.3d 1099, 1102–1103 & n. 9 (9th Cir.2005).  In Briceno, the gang expert testified in terms of "generalities" that the crimes could glorify the gang, but did not provide direct or circumstantial evidence regarding the defendant's specific intent.  555 F.3d at 1078.  In such circumstances, the Ninth Circuit held the expert testimony did not establish the petitioner's specific intent in committing the crimes.  Id. at 1078–1079. This was particularly so in Briceno because the defendant submitted proof of a different motivation, i.e. personal gain.

Subsequent to Garcia v. Carey, California courts had held that § 186.22's specific intent element did *not* require a showing of intent to enable or assist in other criminal activities; the intent to commit the instant gang-related offense sufficed.  See e.g., People v. Hill, 142 Cal.App.4th 770, 774 (2006); People v. Romero, 140 Cal.App.4th 15, 19–20 (2006); People v. Vazquez, 178 Cal.App.4th 347, 353–354 (2009).  Because of the conflict, the Ninth Circuit asked the California Supreme Court

---

sufficiency claims herein, it must be noted that, long ago, the California Supreme Court expressly adopted the federal Jackson standard for sufficiency claims in state criminal proceedings.  People v. Johnson, 26 Cal.3d 557, 576 (1980). Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

12

1  to decide the question of state law. Emery v. Clark, 604 F.3d 1102 (9th Cir.2010).

2       In 2010, the California Supreme Court granted the request for certification and deferred further

3  action pending consideration of a related issue.  In its ruling, in People v. Albillar, 51 Cal.4th 47, 66

4  (2010)(citations omitted)the California Supreme Court rejected Garcia and Briceno and held:

5          "There is no statutory requirement that this 'criminal conduct by gang members' be distinct
          from the charged offense, or that the evidence establish specific crimes the defendant intended

6            to assist his fellow gang members in committing."

7  In short, the California Supreme Court specifically interpreted its own state law contrary to the

8  interpretation of the Ninth Circuit in Briceno and Garcia, and therefore such rulings are inoperative

9  and of no precedential value in this case.

10       Implicit in Petitioner's argument is that more is required to establish the enhancement than

11  mere joint action by a petitioner and other gang members, e.g., specific intent to commit the act for the

12  benefit of the street gang.  However, because, as discussed above, there is no state requirement that the

13  prosecution prove a specific intent to benefit the gang, Petitioner's claim that sufficient evidence did

14  not support such a conclusion misses the target unless the evidence establishes that "several gang

15  members [including Petitioner]…commit[ted] a crime together, [while] on a frolic and detour

16  unrelated to the gang."  Albillar, 51 Cal.4th at 62.

17       Under California law, the jury could reasonably infer the actions were taken to benefit the gang

18  from the fact that Petitioner committed the charged crimes in association with other fellow gang

19  members and it is much less likely that concerted activity by multiple gang members, as distinct from

20  the act of a single gang member, were committed for some purpose unrelated to the gang. (Morales,

21  112 Cal.App.4th at 1198.)  Moreover, as the 5th DCA pointed out, there was no evidence that Petitioner

22  and his fellow gang members were engaged in activity unrelated to the gang. Therefore, as in Morales,

23  the jury reasonably could have inferred appellant acted in "association with" his gang. (§186.22(b)(1).)

24       To the extent that Petitioner is also challenging the sufficiency of the evidence supporting the

25  specific intent element of the gang allegation, that contention also fails. On direct appeal, Petitioner

26  argued that the evidence was insufficient to establish that he acted with the requisite "specific intent to

27  promote, further, or assist in criminal conduct by gang members" within the meaning of §

28

186.22(b)(1) because no evidence was presented "to demonstrate that the current offenses were distinctive enough to be labeled a Norteno gang offense, or that they were done for the purpose of furthering the Norteno gang's activities."

However, as the 5th DCA observed, the major legal premise of Petitioner's argument is that § 186.22(b)(1) requires proof of the specific intent to promote, further, or assist in the "criminal conduct of the gang," and not simply criminal conduct committed by individuals who also happen to be members of a street gang. As discussed above, <u>Abillar</u> rejected Petitioner's argument that § 186.22(b)(1) requires a specific intent to promote, further or assist a gang-related crime:

> "The enhancement already requires proof that the defendant commit a gang-related crime in the first prong-i.e., that the defendant be convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang. [Citation.] There is no further requirement that the defendant act with the specific intent to promote, further, or assist a gang; the statute requires only the specific intent to promote, further, or assist criminal conduct by gang members."

<u>Albillar</u>, 51 Cal.4[th] at 67. Moreover, that criminal conduct may be "the criminal conduct underlying the offense of conviction sought to be enhanced." <u>Id</u>. at p. 66.

As the state appellate court pointed out, the trial record established that Petitioner and his two cohorts, Radaban, and Martinez were all members of the Norteno street gang; that Radaban threatened the victim with a knife while Petitioner pointed a gun at him; and that Radaban grabbed the victim's car keys, cell phone, and other items.  The three gang members then drove away in the victim's car. Subsequently, text messages were sent from the victim's stolen cell phone suggesting that there may have been some gang involvement.  Finally, these events took place in the gang's territory and, as the gang expert testified, the gangs are extremely territorial.

 Together, this evidence, along with all reasonable inferences therefrom, when viewed in the light most favorable to the prosecution, was more than sufficient for any rational trier of fact to have concluded that the essential elements of the gang enhancements, i.e., Petitioner acted with the specific intent to assist, further, and promote the criminal conduct of gang members Rabadan and Martinez, had been established beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307 at 319. Accordingly, the state court's adjudication to that effect was not objectively unreasonable, and

14

Petitioner's claim must fail.

Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal

habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## ORDER

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1.      The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;

2.      The Clerk of the Court is DIRECTED to enter judgment and close the file;

3.      The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

Dated:   __April 10, 2014__                      _____/s/ Jennifer L. Thurston__
                                                UNITED STATES MAGISTRATE JUDGE

16